IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CLIFTON WILLIAMS**,               )
                                    )
              Plaintiff,             )
                                    )
v.                                  )          Civil No. **03-505-CJP**[1]
                                    )
**SGT. ALBERT, C/O HOLDER, and**    )
**C/O HALL,**                       )
                                    )
              Defendants.            )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

At the close of the plaintiff's case, defendants Cynthia Albert, David Holder, and Mark

Hall orally moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a).[2]  The Court

heard oral argument on the motion, and granted same on the record.  (Tr. 59-63).  In doing so,

the Court indicated that it would issue a written order setting forth the reasons for its decision.

Rule 50(a)(1) provides that the Court may grant a motion for judgment as a matter of law

where "a party has been fully heard on an issue and there is no legally sufficient evidentiary

basis for a reasonable jury to find for that party on that issue."

"Judgment as a matter of law is proper only if a reasonable person could not find that the

evidence supports a decision for a party on each essential element of the case, viewing the

---

[1]Pursuant to 28 U.S.C. § 636(c)(1), upon the consent of the parties, this case has been referred to the undersigned United States Magistrate Judge for final resolution.  See, Docs. 37 & 40.

[2]Defendant Childers was dismissed on plaintiff's motion prior to trial.  See, Docs. 65 and 66.

1

evidence in the light most favorable to the nonmovant." *Mutual Service Casualty Insurance Company v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001), citing *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001). In determining a motion under Rule 50(a), the Court does not weigh the evidence or determine credibility. *Harper v. Albert*, 400 F.3d 1052, 1067 (7th Cir. 2005). The Court must consider whether there was substantial evidence in favor of the nonmovant; a "mere scintilla" does not suffice. *Mutual Service Casualty Insurance Company, supra.*.

Plaintiff, an inmate in the Illinois Department of Corrections, sued a number of prison employees for retaliating against him for exercising his First Amendment rights. The case went to trial on two claims. In the claim designated as Count 1, plaintiff alleged that defendant Holder retaliated against him by threatening him. In the claim designated as Count 3, plaintiff alleged that all defendants retaliated against him by placing him in a stripped-out cell for over 15 days.

### Evidence as to Count 1

There was no evidence at all with regard to Count 1. Neither plaintiff nor any of his witnesses testified that Holder threatened plaintiff in any manner. Holder is obviously entitled to judgment on Count 1.

### Evidence as to Count 3

The Court first notes that there was some confusion in the evidence as to what constitutes a "stripped cell." Plaintiff referred to being placed in a strip or stripped cell. Defendant Hall, who was an officer at Menard Correctional Center from November, 2000, to December, 2004, testified that the phrase "strip cell" technically refers to a cell in the healthcare unit commonly

used to house suicidal inmates.  The situation to which plaintiff referred, in which some or all of

the inmate's property is removed because for disciplinary reasons, such as the property is

contraband, unauthorized, or is being misused by the inmate, is called a "restricted property

cell." (Tr. 34).  As plaintiff and the witnesses referred to the cell of which plaintiff complains as

a "strip cell," the Court will do the same, with the understanding that the designation is evidently

not technically correct.

The evidence was unclear as to the exact date on which plaintiff claims he was put in the

strip cell.  The only evidence about the date came from plaintiff's witness Vinning, another

inmate.  Plaintiff asked whether Vinning witnessed Williams "be stripped of his property" in

September, 2002.  Vinning answered in the affirmative.  (Tr. 25).

Plaintiff presented no details about the incident in question.  Crucially, he offered no

evidence that any individual defendant was involved in the decision to place him in a strip cell,

or that any individual defendant actually placed him in the cell.

Plaintiff testified as follows:

What I want to go into is saying that upon me filing numerous grievances about
misconduct being done to me while in Menard Correctional Facility, I was retaliated
against by the defendants by being stripped out of my property, and also on numerous
occasions denied my breakfast tray.          (Tr. 52).

The Court then sustained an objection because the claim for denial of breakfast had

previously been dismissed for failure to exhaust administrative remedies.  **See, Doc. 60.**  Plaintiff

then continued testifying:

I was stripped out of my property because of the fact of me filing grievances and making
complaints about misconduct done to me by the defendants.  I was put in a cell with no
mattress, no running water, no toilet paper, no toothbrush, without anything but a steel
cell or steel bunk and concrete for over 15 days for me doing this.  I ain't got nothing else
to say.  (Tr. 52).

3

Conduct by prison employees "that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). In order to hold a defendant liable under Seciton 1983, plaintiff must establish that the individual defendant was "personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995) (citation omitted). The "long-settled" rule is that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)(citations omitted).

Plaintiff failed to establish a case against any of the defendants. First, he never presented evidence that any defendant removed his property from him or placed him in a stripped cell. There was no evidence that either David Holder or Mark Hall even knew that plaintiff's property was removed from him in September, 2002. Cynthia Albert testified that she became aware of the situation after the fact. Under questioning by plaintiff, she testified that she became aware that Williams' property had been taken from him on the orders of Superintendant Spiller. She testified as follows:

> When I arrived at work that evening I was told by the 3-to-11 shift cellhouse sergeant that your property was taken in restricted property code at 1:00 p.m. that afternoon. (Tr. 43).

Albert testified that she never ordered plaintiff's property restricted or removed his property. (Tr. 42) She further testified that it is not possible for her, as a sergeant, to order that an inmate by placed on restricted property status. (Tr. 44). Rather, she must go through the chain of command, that is, through the cellhouse lieutenant to the shift supervisor, who

4

determines whether restricted property status should be ordered.  In addiiton, the duty warden must be notified.  (Tr. 44-45).  Plaintiff did not offer any evidence to refute this testimony.

Officer George Wellborn (Tr. 12-13) and defendant Mark Hall (Tr. 32- 33, 35) also testified that an officer must have an order from the cellhouse lieutenant (or higher) in order to remove an inmate's property.  Both Hall and Albert denied ever removing an inmate's property except on such orders.  (Tr. 32, 35, 45).  There was no evidence to the contrary.

In addition, plaintiff presented no evidence at all from which a reasonable juror could conclude that any of the defendants harbored any intention to retaliate against plaintiff for anything.  There was no evidence that Albert, Holder, or Hall knew that plaintiff had filed grievances or made complaints.

Lastly, defendants presented evidence that there was a sufficient, non-retaliatory reason for placing plaintiff on restricted property status.  The "ultimate question" in a retaliation case is "whether events would have transpired differently absent the retaliatory motive."  ***Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)**.  The Seventh Circuit has instructed that "the retaliation inquiry should be undertaken in light of the general tenor of *Sandin*, which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." ***Babcock, Id.* (internal citation and quotation marks omitted).**

Plaintiff admitted that he was found guilty of a series of disciplinary violations in September, 2002, for such acts as starting a fire in his cell, flooding the cell several times, covering the window, refusing orders to uncover the window, and possessing a piece of metal. (Tr. 53-55).  He was also found guiltily of intimidation and threats for making statements such as "When you come in and get me, one of you motherfuckers are going to die."  (Tr. 54).

This evidence suggests that prison authorities had legitimate reasons for placing Williams on restricted property status.

The Court concludes that no reasonable person could find that the evidence supports a decision for plaintiff against any of the defendants on each essential element of the case.

For the foregoing reasons, defendants' Oral Motion for Judgment as a Matter of Law **(Doc. 68)** is **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of defendants Cynthia Albert, David Holder, and Mark Hall.

**IT IS SO ORDERED.**

**DATE:  September 22, 2006.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**